### PIERCE *v.* GATES.

A vendor's lien on real estate for unpaid purchase-money may be enforced against a purchaser from the vendee with notice.

If an allegation in a bill in chancery be denied by the answer, the allegation must be proved by two witnesses, or by one witness and corroborating circumstances.

If a distinct fact in avoidance be set up by an answer in chancery, such fact must be proved.

*Saturday,
June 15.*

ERROR to the *Cass* Circuit Court.

SULLIVAN, J.—This was a bill in chancery filed by *Gates* against *Pierce* and one *Murray*, to enforce a lien set up by the complainant on a tract of land sold by him to *Murray*, and by *Murray* to *Pierce*, for a part of the purchase-money. The bill alleges that on the 9th of *October*, 1838, the complainant sold to *Murray* the tract of land described in the bill for the sum of 300 dollars; that all the purchase-money except about 116 dollars was paid; that for the residue the notes of *Murray*, without any security whatever, were taken, part payable in 60 days and part in six months; that on the same day that complainant sold and conveyed to *Murray*, the latter sold and conveyed to *Pierce;* and that *Pierce* had notice that a part of the purchase-money was unpaid, &c. The answer of *Pierce* admits the sale by the complainant to *Murray* and by *Murray* to *Pierce*, but denies the notice, and sets up affirmatively that he was informed by the complainant that he had no lien or claim upon the land, and that he would give possession at any time, that he afterwards rented the land to the complainant, &c. The bill was taken as confessed against *Murray* who, it was admitted, had left the state insolvent; and upon the final hearing the Court decreed for the complainant.

The equitable lien of the vendor of land upon the land sold for the unpaid purchase-money, where no distinct security

has been taken, or the lien otherwise waived, is not denied. Nor is it denied but that the vendor's lien upon the land may be enforced against a purchaser from the vendee with notice. The main question in this case is, whether there is proof of notice.

Where an answer denies the allegations of the bill, the statute declares that the complainant shall not have a decree unless the bill be proved by two witnesses, or by one witness and corroborating circumstances. If the complainant have the proof required by the statute, the decree of the Circuit Court must stand.

*Brown*, a witness in the cause, states that a short time after *Murray* had left the country, he had a conversation with *Pierce* about the land he purchased from *Murray*, and which *Murray* had purchased from *Gates;* that in that conversation *Pierce* said "he paid *Murray* all down for the land," and "that he knew that *Murray* had promised *Gates* to pay him," and concluded by saying that "he had run off and never paid him." The plain import of the foregoing admission is, that at the time of the purchase by *Pierce* from *Murray*, the former knew that the purchase-money, or some part of it, was still due to *Gates*. The remaining proof is circumstantial, but we think it goes to establish the fact that *Pierce* had notice, at the time he purchased from *Murray*, that at least a portion of the purchase-money, on the sale from *Gates* to *Murray*, remained unpaid. It appears that *Gates* lived on the land about eight miles distant from *Logansport*, that *Pierce* wished to purchase the land, and, on the day previous to the sale to *Murray*, had examined it and offered *Gates* 250 dollars for it which he refused, but offered to sell for 300 dollars. *Pierce* refused to buy at that price and returned to *Logansport*. The next morning before breakfast, *Murray* came to the house of *Gates*, and after a very slight examination of the land proposed to purchase it, offering *Gates* his price, viz., 300 dollars. The parties agreed, and on the next day the land was conveyed to *Murray*, and *Murray*, on the same day that he received a conveyance, conveyed to *Pierce*. It further appears that *Pierce* resided in *Logansport*, that *Murray* boarded with him, and that the horse that *Murray* rode to the house of the com-

May Term,
1844.

PIERCE
v.
GATES.

plainant when he came to purchase the land, was the same horse that the defendant rode the previous day. Without saying any thing about the fraud which may be imputed to the defendant, we think it is fairly inferible from the circumstances that *Murray* purchased with the knowledge, if not for the use of *Pierce;* and if he did so, it is very improbable that *Pierce* was left uninformed of the terms of the contract. There is moreover in the depositions taken by the defendant, no proof that his purchase from *Murray* was for a valuable consideration. His statement to *Brown* is all the testimony on the subject. The matter as between them seems, so far as it is made to appear to us, to have been transacted in secret, a circumstance which, connected with other circumstances in the case, throws suspicion on the transaction.

There is one other question raised which must be noticed. The plaintiff in error contends that the affirmation in his answer, that *Gates* informed him that he had no claim or lien on the land, must stand as true unless disproved by the complainant. In this he is mistaken. It is a new fact introduced into the case by which the defendant seeks to discharge the land from the lien which the complainant claims. It is set up in avoidance of the complainant's equity, and must therefore be proved by the party asserting it. 2 Blackf. 324.—3 *id.* 18.

We concur with the Circuit Court in the opinion, that *Pierce* purchased from *Murray* with notice of the complainant's equity, and that the latter has a lien upon the land for so much of the purchase-money as remains unpaid.

*Per Curiam.*—The decree is affirmed with costs.

*H. Chase,* for the plaintiff.

*D. D. Pratt,* for the defendant.